B. H PETERS v. STATE OF OHIO.
Wood County Common Pleas, 1901.)

1. Under sec. 3718a, R. S., (Pure Food law) prosecutions may be instituted before mayors and police judges of municipalities as well as before justices of the peace, but the jurisdiction of mayors and police judges is under such section limited to the prosecution of cases arising within the municipal boundaries, while the jurisdiction of justices of the peace in such cases is co-extensive with the county.

2. The legislature may withhold trial by jury for new offenses created by statute and unknown to the common law, or if known to the common law, where no such right existed.

3. Where prosecutions under sec. 3718a, R. S., are before a justice of the peace, the defendant is entitled to a trial by jury, unless he pleads guilty or waives a jury trial. But in such prosecutions before a mayor or police judge, the defendant is not entitled to trial by jury where the penalty provided is by fine only.

4. An affidavit which charges in substance that on or about the 20th day of November, 1900, at the county of Wood and state of Ohio, P, late of said county, unlawfully did sell to B a quantity, to-wit: about one pound of oleomargarine, the same being then and there a substance not pure butter, of not less than 80 per cent. of butter fats, which said substance was then and there made as a substitute for, in imitation of, and to be used as butter; that then and there said oleomargarine sold in the manner and form aforesaid, contained coloring matter to-wit: *annatto*, contrary to the form of the statute," etc., charges as offense under the act of 1894 (87 O .L., 248) only and not also an offense under the acts of 1890 (87 O. L., 181, and 87 O. L., 51).

5. In a prosecution under the pure food laws it is not incumbent on the state to aver or prove in the first instance that the article was sold to be used as food, but this question is a matter of defense.

MELHORN, J.

The cases of *B. H. Peters* v. *State, William L. Hough* v. *State* and *Fred B. Whitker* v. *State,* argued and submitted together, disclose these facts: The first two plaintiffs in error, residing and doing business as retail grocers in the village of North Baltimore, Wood county, Ohio, were arrested on complaint made before one J. H. Shatzel, mayor of Bowling Green, by Edward B. Beverstock, inspector of Ohio food and dairy commission, charging them with a violation of the act of May 16, 1894, 91 O. L., 274. "to prevent fraud and deception in the manufacture and sale of oleomargarine, and promote public health in the state of Ohio." The substance of one of the affidavits, all being substantially alike, will appear later in this opinion.

Motion was made on behalf of Peters and Hough to dismiss the complaint against them for the principal reason that as the alleged offense was not charged to have been committed within the village of which said Shatzel was mayor, to-wit: Bowling Green, said mayor was without lawful authority to hear and determine said complaint; which motion was overruled, and against the objection of said Peters and Hough they were put upon trial before said mayor, without a jury, found guilty and sentenced to pay a fine only, this being all the law, under which sentence against them was pronounced, authorized, they not being manufacturers.

In the Whitker case the plaintiff in error resided and carried on business in said village of Bowling Green where he was arrested on complaint of said Beverstock, upon a charge similar, except as to time and certain other

minor details, to that made against said other plaintiffs in error. Whitker plead not guilty and thereupon demanded a trial by jury, which said mayor refused, was convicted and sentence of fine only so imposed.

Error proceedings are prosecuted in this court to obtain a reversal of these judgments rendered by the mayor against said plaintiffs in error, which presents several important questions for consideration and determination.

First. In the two cases, which we may term for convenience the North Baltimore cases, did the mayor of Bowling Green have jurisdiction to hear and determine them?

Second. In the Bowling Green case, as also the others, were the plaintiffs in error entitled to a jury trial?

Third. Do the affidavits made in these cases, although charging violation of the act of 1894, in which as to other than manufacturers the penalty is a fine, also in effect charge a violation of certain other acts relating to adulteration of food and drugs, and the prevention of deception in the sale of dairy products, in which acts the penalty includes imprisonment?

Fourth. Are the findings and judgments of the mayor authorized by the evidence submitted in the respective cases?

Several of these questions involve construction of the laws to which I have just referred, as well as cetrain other sections of our statutes relating to the prosecution and disposition of cases in which the offense charged is a misdemeanor, in order to determine whether the records disclose lawful trial and conviction of these plaintiffs in error.

The statute under which, as claimed by the defendants in error, the charges were made is designated as sections 4200-16 and 4200-20, Bate's Revised Statutes, inclusive.

Section 4200-16 says: "No person shall manufacture, offer or expose for sale, sell or deliver, or have in his possession with intent to sell or deliver, any oleomargarine which contains any methyl, orange, butter yellow, annatto, analine dye ,or any other coloring matter."

Section 4200-19, defining oleomargarine, says: "The word 'oleomargarine' as used in this act shall be construed to mean any substance, not pure butter of not less than 80 per cent. of butter fats, which substance is made as substitute for, in imitation of, or to be used as butter."

Penalty for violation is provided by section 4200-20 as follows: "Any manufacturer who violates any of the provisions of this act shall, upon conviction thereof, be fined in any sum not less than $100 nor more than $500; and for each subseuent offense. in addition to the above fine, may be imprisoned in the county jail not more than 90 days. Any person violating any of the provisions of this act, shall upon conviction thereof, be fined not less than $5.00, nor more than $100."

The affidavit from which I shall quote is that filed in the Peters case, and in substance says: "On or about the 20th day of November, 1900, at the county of Wood and state of Ohio, B. H. Peters, late of said county, unlawfully did sell to Edward B. Beverstock a quantity, to-wit: about one pound of oleomargarine, the same being then and there a substance not pure butter, of not less than 80 per cent. of butter-fats, which said substance was then and there made as a substitute for, in imitation of, and to be used as butter; that then and there said oleomargarine sold in the manner and form aforesaid, contained coloring matter, to-wit: *annatto*, contrary to the form of the statutes." etc.

A section of the statute of prime importance for consideration in determining the first two questions which I have said arise in these cases, is that designated as section 3718a. This is one of the sections in the chapter styled "Societies to prevent cruelty to animals," and being a section which not only expressly applies to cases for violation of the laws to prevent adulteration of food and drink; adulteration and deception in the sale of dairy products and drugs and medicines, but also for violation of the laws for prevention of cruelty to animals, and the laws relating to employment of children, section 6984, Revised Statutes, and neglect of children, section 6984a, Revised Statutes which last named sections constitute a part of that chapter of our code styled "Offenses against public policy."

Section 3718a in part provides: "Any justice of the peace within his county and city, and police or mayor of any city or village, within his city or village, shall have jurisdiction in cases of violation of the laws to prevent adulteration of food and drink, the adulteration and deception in the sale of dairy products, and drugs and medicines, and any violation of the law for prevention of cruelty to animals, or under section 6984, Revised Statutes, or section 6984a thereof, as herein enacted. If such prosecutions be before a justice of the peace and a trial by jury be not waived, the said justice shall issue a venire to any constable," etc.

On behalf of the state it is claimed that seciton 3718a, does not restrict the provisions of sections 1817 and 1824, Revised Statutes, which provide, in substance, that the mayor (and under section 1788, the police court) shall have final jurisdiction to determine any prose-

cution for a misdemeanor unless the accused is, by the constitution, entitled to a trial by jury, and the jurisdiction in such case shall. be coextensive with the county.

As originally enacted section 3718a, in part read (81 O. L., 181): "Any justice of the peace, police judge or mayor of any city or village shall have jurisdiction to hear any prosecution," etc., but by amendment of April 3, 1888, 83 O. L., 144, this part of the section was made to read as it now reads: "Any justice of the peace *within his county and city*, and police judge or mayor of any city or village *within his city or village,* shall have jurisdiction," etc., these added words, which I have italicised, being preserved in all subsequent amendments.

Now, it is urged that as section 3718a in its original enactment containing no territorial limitation of jurisdiction, the effect of its enactment was to enlarge the jurisdiction conferred upon mayors and police judges by 1817 and 1824 by adding to the final jurisdiction to hear and determine prosecutions for misdemeanors wherein the accused was not entitled to a trial by jury, prosecutions for violation of certain laws for prevention of cruelty to animals, wherein the accused was entitled to a trial by jury; that the provisions of 1817 and 1824, giving jurisdiction co-extensive with the county, not being altered by 3718a, as originally enacted, the subsequent amendment of section 3718a could only increase or diminish the added jurisdiction conferred by the original enactment of section 3718a, and that the amendment of April 3, 1888, enlarged the jurisdiction conferred by the original enactment of section 3718a by adding prosecutions for violation those so-called pure food laws in which the accused was entitled to a trial by jury, but that the language "within his city or village," employed for the first time in the amendment of April 3, 1888, limited the territorial extent of the jurisdiction in both prosecutions for violation of certain laws to prevent cruelty to animals and prosecutions for violations of those pure food laws in which the accused was entitled to trial by jury, to the limits of the mayor's city or village; that this interpretation gives full effect to this language "within this city or village" and ousts none of the jurisdiction conferred by sections 1824 and 1817.

Statutes, it is true, are to be construed together, and each legislative act to be interpreted with reference to other acts relating to the same subject matter, with the view of giving effect to all, even though they contain no reference to one another and may have been passed at different times. *Black on Interpretation Laws,* section 86.

It must not be forgotten, however, that in the construction of statutes legislative intent, must be sought, first of all, in the language of the statute itself, and if that language is plain, free from ambiguity, and expresses a sensible meaning, that meaning is conclusively presumed to be the meaning which the legislature intended to convey. Even though the court may be convinced that some other meaning was really intended by the law-making body, yet the explicit declaration of that body is the law and the court cannot depart from it. *Black on Interpretation of Laws,* section 35.

I have said that section 3718a, connects itself with sections 6984 and 6984a and other sections of the chapter of offenses against public policy, and, on the theory that we should examine other kindred legislation, if we turn to this chapter we will notice there section 6966-1, also section 6966-2, giving to justices of the peace, mayors and police judges final jurisdiction in all cases arising under certain sections therein named, part of that chapter relating to birds, fish and game, and which sections, or at least some of them, provide penalties that include imprisonment thus entitling a party to a jury trial. But sections 6966-1 and 6966-2, do not contain, like section 3718a, the words "within his city or village."

The construction of section 3718a, contended for by the state, does not seem to me to be warranted. On the other hand, I am of the opinion that prosecutions before the mayor or police judge for the offenses referred to in said section 3718a, by legislative intendment, are limited to the territory expressly stated, whether the punishment prescribed includes imprisonment or not; and, according to this view, in the North Baltimore cases, it therefore follows that the mayor erred in overruling the motions of Peters and Hough to dismiss the complaint against them for want of jurisdiction.

Next, is the question, was the plantiff in error Whitker, of whose case the mayor did have jurisdiction, entitled to a jury trial, either (1) by virtue of the constitutional provision or (2) by virtue of legislative enactment?

The act defining the offense for which this prosecution was had is one of those enacted by the state in the exercise of the police power, the power which has been referred to by an eminent jurist (Justice Gray in *Leisy* v. *Hardin,* 135 U. S., 100, 127,) as "that inherent and necessary power essential to the very existence of civil society, and the safeguard of the inhabitants of the state against disorder,

disease, poverty and crime." Courts have time and again held such legislation constitutional, and this very act is so held by our supreme court in *State* v. *Dairy Co.*, 62 Ohio St., 350.

In *Cincinnati* v. *Steinkamp, Trustee*, 54 Ohio St., 284, Judge Spear, delivering the opinion, says: page 289 "Our constitution, and the practice of the courts, have already recognized the fact that in many cases no right of trial by jury exists. If the civil authorities were obliged to wait the slow process of a jury trial in such matters the evil sought to be remedied would seldom be avoided," and cites a case which was much discussed by counsel in the case at bar, viz: *Inwood* v. *State*, 42 Ohio St., 186. This case is relied on by the state in support of the proposition that said plaintiff in error was not entitled to a jury trial. There is also cited a common pleas decision, *Ward* v. *State*, 5 N. P., 81. It is expressly held in *Inwood* v. *State, supra*, that a statute which authorizes a penalty by fine only, upon a summary conviction under a police regulation, although imprisonment as a means of enforcing the payment of the fine is authorized, is not unconstitutional on the ground that no provision is made for a jury trial.

The meaning given by the courts to the language of the constitution "the right of trial by jury shall be inviolate," is that where the right existed before the constitution it could not be taken away by the legislature, but where there was not such right it was not extended or enlarged. The intention was to preserve the right of trial by jury as known at common law. *Work* v. *State*, 2 Ohio St., 296, *Inwood* v. *State supra*.

The legislature may, therefore, withhold trial by jury for new offenses created by statute and unknown to the common law, or if known where no such right existed.

In considering legislative enactments decisions by courts of other states are of course, only helpful according as the statute upon which such decisions may be based are similar to our own, and it is upon the point only that the offenses of which the plaintiffs in error were convicted is not such as gives a constitutional right to a trial by jury that I cite the case of *Carter.* v. *Camden*, 49 N. J. L., 600, where it is held that in a summary proceeding to recover a penalty for violation of an act to prevent deception in the sale of oleomargarine, the right of trial by jury does not exist.

The court say: "It is admitted that the statute in question is in the nature of a police regulation. It was enacted to prevent cheating in the sale of articles made to imitate butter and cheese. The proceedings to enforce it are intended to be summary in their character."

It appearing, therefore, that the offense charged against the plaintiff in error is not such a one as entitles the accused to a jury by constitutional right, has he such right by virtue of legislative enactment. These food laws as well as certain other laws, I have mentioned, are the creation of several different acts. Some of the penalties provided for their violation include imprisonment, and as to these, the accused, of course, has the right of trial by jury, if not waived. It is also equally clear that under all these acts whether the punishment is fine only, or includes imprisonment, if the prosecution is before a justice of the peace, and a trial by jury is not waived, then under section 3718a a jury must be empaneled.

Now, it is a rule of construction that every statute is to be construed with reference to its intended scope and the purpose of the legislature in enacting it. *Black on Interpretation of Laws*, section 56. And in construing an amendatory statute the mischiefs or hardships produced by the old law must be considered together with the remedy proposed by the new. Ib., 356.

In observance of these rules let us for a moment examine into the amendments of section 3718a which, by the act of April 14, 1884, (81 O. L., 181), first became a supplementary section of 3718. In the original enactment, part of which I again read, to-wit: "If such prosecution be before a justice of the peace, and trial by jury be not waived, the said justice shall proceed to empanel a jury," etc. Amendment was made to this section April 3, 1888, (85 O. L., 144), making the part of the section just quoted read: "If such prosecutions be before a justice of the peace, and a trial by jury be not waived, the said justice shall issue a venire to any constable of the county," etc. In 1893 (90 O. L., 335), by an amendment there is inserted the words: "Or mayor" and "marshall or policeman," making this part of the section read: "If such prosecutions be before a justice of the peace or mayor, and a trial be not waived, the said justice or mayor shall issue a venire to any constable of the county, or marshall or policeman," etc. The next year another amendment of the section was made (91 O L., 412) in which these words "or mayor" and "marshall or policeman" are omitted and thus again this part of the section is made to read: 'If such prosecutions be before a justice of the peace and a trial by jury be not waived, the said justice shall issue a venire to any constable," etc. Subsequent amendments of section 3718a were made, but in none of them is there any change in the part of the section last quoted.

The object of the legislature in giving final jurisdiction to mayors, police judges, and justices of the peace in this class of offenses, we may assume was to provide means for speedy trial in the vicinity of commission of the person charged, and if the offense be committed outside of a city or village, the justice of the peace, with a jury, if a jury is not waived, could hear the case.

Before the legislation represented by section 3718a and certain other sections, the criminal jurisdiction of a justice of the peace was that provided for in section 610 and 7146 and 7147, Revised Statutes. By section 610 every justice of the peace is made a conservator of the peace with jurisdiction thoughout the county to inquire into a complaint against a person brought before h,im, and either discharge the accused or recognize him to appear before the proper court, or otherwise dispose of the complaint as provided by law. By sections 7146 and 7147 provision is made for disposition of a case where the charge is a misdemeanor and the accused pleads guilty. Where there is no plea of guilty, if the offense is a misdemeanor and the accused in writing waives a trial by jury the justice may render final judgment, otherwise he must recognize him to the proper court. The justice of the peace, therefore, under these sections, has no final jurisdiction where the offense is a misdemeanor and there is a plea of not guilty and a jury is not waived.

Not so, however, with a mayor or police judge; in villages the mayor, by sections 1824 and 1825 has final jurisdiction to hear and determine any prosecution for a misdemeanor unless the accused is by the constitution entitled to a trial by jury. He has jurisdiction to determine a complaint of misdemeanor notwithstanding the right to a jury if a waiver is filed, and by section 1828 in misdemeanors prosecuted in the name of the state he may summon a jury and upon the affidavit try the accused, providing the latter, before the commencement of the trial, files in the case a request for such jury.

Most of the laws relating to food, game and other kindred subjects define offenses for which punishment includes imprisonment, hence provision for a jury had to be made. Now, if the amendment made of section 3718a in which appears the words "or mayor" was still in force a jury would be required unless waived, whether the punishment included imprisonment or not. The omission of these words in subsequent amendments we must presume to have been intentional. It was for some reason. What was it? To me it seems reasonable to conclude the idea was that as justices of the peace under the law prior to such legislation as section 3718a had no power to summon a jury, but the mayor, under certain conditions which I have already mentioned, had such power, therefore no other provision need be made for a jury before the mayor and the prosecutions before the latter of violations of the laws referred to in section 3718a should be in accordance with the provisions of the general sections 1788, 1817, 1824 and 1828, limiting however, as I have already said, the jurisdiction as to offenses mentioned in section 3718a to the territory within the city or village.

Now if for violation of one or more of these offenses defined in the food and other laws mentioned in section 3718a the penalty be a fine only, then under these general laws, 1788, etc., under which the prosecution is had before the mayor or police judge, no right by jury is conferred.

When discussing the question as to the jurisdiction of the mayor to hear these North Baltimore cases, I called attention to section 6966-1 giving justices of the peace, mayors and police judges final jurisdiction in prosecutions for hunting on lands of another, and section 6966-2, giving the same officers final jurisdiction in prosecutions for violating statutes relating to birds and fish. It will be observed that said sections 6966-1 and 6966-2 expressly say: "The defendant shall be entitled, on demand, to trial by jury," and these words which are not in section 3718a are followed in sections 6966-1 and 6966-2 by the same words that are in section 3718a, to-wit: "If such prosecutions be before a justice of the peace, and a trial by jury be not waived, the said justice shall issue a venire," etc.

Would not the absence in section 3718a of words such as used in sections 6966-1 and 6966-2: "The defendant shall be entitled, on demand, a trial by jury," reasonably be construed, if we are to consider other legislative acts, as an indication that in prosecutions before the mayor or police judge for violation of the food, and other laws referred to in section 3718a, there is to be no right of a jury except as given under these general sections, 1788, 1824, etc.

I am, therefore, of the opinion that in the prosecution for violation of the offenses referred to in section 3718a, any such offense for which the penalty is fine only, and the prosecution is before the mayor or police judge, the accused is not entitled to a trial by jury, and as to the argument that this construction deprives the accused when prosecuted before the mayor for an offense punishable by fine only, of a right, to-wit: a jury, which the statute confers upon him when such prosecution is brought before a justice of the peace, who may be, and, as we are aware sometimes is, a person holding both offices, I can only say

the courts are not at liberty to add to the language of the statute, and where amendment is made by which there are material omissions from the old law the court must hold that the legislature intended such omissions, even though this construction may seem inconsistent with the general policy of the particular legislation.

Upon the remaining two questions made in these cases, time permits only a few words to be said.

1. The claim of the plaintiffs in error that the affidavits, although charging a violation of the act of 1894, also in effect charge a violation of the act, 87 O. L., 248, entitled, "An act to provide against the adulteration of food and drugs," and the act, 87 O. L., 51, entitled, "An act to prevent deception in the sale of dairy products and to preserve the public health," I am of the opinion should not be sustained. These last two named acts define offenses, material elements of which, in my judgment, are not included in the act of 1894, and these affidavits are insufficient to charge any offense except under said act of 1894. The rule is well settled that an information or indictment to charge an offense must by proper averment contain all the elements essential to constitute that offense as the statute creates it. *Larney* v. *Cleveland,* 34 Ohio St., 599, 601.

2. Another claim made by the plaintiffs in error is that the evidence does not show an unlawful sale; that the oleomargarine sold to Beverstock was not a voluntary sale of the article for food but a compulsory sale for the purpose of analysis.

From the record it appears that no testimony was offered on behalf of the defendants in the trials below. Beverstock in his testimoney says, in substance, that he called for a quantity of oleomargarine and paid for it. He does not say, that when he called for it he told any one of the plantiffs in error that his purpose in procuring it was for analysis. On his cross-examination in the Whitker case, as I remember, it was developed that such was his purpose, and also that Whitker knew he was an inspector of the food department. But now if thedefendants below made no sale of oleomargarine to be used as food, this was a matter of defense, and no part of the state's case. *State* v. *Kelly,* 54 Ohio St., 166, 180.

On consideration of the whole of the testimony disclosed by the bills of exceptions, I am of the opinion the finding of the mayor that what was done in procuring of the oleomargarine constituted in law a sale, was not error. This court cannot say such finding is clearly against the evidence.

It follows from the views herein above expressed that the judgments of the mayor in these North Baltimore cases must be reversed, and that in the Bowling Green case affirmed. by appeal.

*Thomas E. Steel* and *James O, Troup,* for plaintiffs in error.

*Walter F. Brown* and *James & Beverstock,* for defendant in error.